In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3901

CINDY GOLDEN,

*Plaintiff-Appellant,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:11 CV 399 — **James T. Moody**, *Judge.*

ARGUED SEPTEMBER 9, 2013 — DECIDED MARCH 11, 2014

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* Cindy Golden brought this purported class action suit against her auto insurer State Farm Mutual Automobile Insurance Company ("State Farm"). Golden attacks State Farm's practice of using its own in-house attorneys to defend its insureds against third-party claims, alleging that State Farm owes its insureds a duty to explain in

its policies that such house counsel may be used. Golden's policy (attached to her complaint) provides that in the event of an accident, State Farm will pay "attorney fees for attorneys chosen by *us* to defend an *insured* who is sued" (emphasis in original) for damages. The district court dismissed Golden's complaint, concluding that Indiana law creates no obligation for an insurer to provide advance notification to an insured that it uses house counsel to defend its insureds. The court also denied Golden's request to certify to the Indiana Supreme Court the question of whether advance notification is required. Golden appeals.

I.

According to Golden's complaint, which we accept as true at this stage, sometime before April 2009 she purchased automobile insurance from State Farm to insure her 2007 Dodge Nitro. She renewed her policy at regular six-month intervals, and the policy remains in force today. As described above, the mandatory liability portion[1] of her insurance provided that State Farm would defend the insured against a third-party lawsuit using attorneys chosen by State Farm. Golden alleges that "historically and traditionally" State Farm and other insurers defended third-party claims against insureds by hiring private, independent attorneys. State Farm (and, presumably, other insurers), however, now routinely uses its own in-house staff attorneys to represent insureds against such third-party claims. It is this practice that Golden

---

[1] *See* Ind. Code §§ 9-25-4-4 & 9-25-8-2 (listing requirements for statutorily required liability coverage and making operation of a vehicle without liability insurance a Class A infraction).

attacks. She alleges that this arrangement, which was disclosed to her at the outset of her representation, violates a number of supposed duties owed her by State Farm, including a duty of good faith and duties arising from a "special relationship between insurer and insured."

In October 2009, Golden was sued as the result of a collision she had been in earlier that year. She was represented in the suit by Patrick J. Murphy, who worked in the corporate law department of State Farm. At the outset, Murphy fully and accurately disclosed to Golden his status as a State Farm employee. Specifically, Golden received a letter from Murphy explaining that he was an attorney "working as a full time employee of State Farm," advising her that he had an ethical obligation to ensure that neither his "professional judgment" nor the quality of his legal service would be "compromised by any guidelines or other directives that might be issued by State Farm." Murphy's letter also contained the following disclosure regarding any possible conflict of interest:

> Based on the information I have received and reviewed to date, I am not aware of any conflict of interest between your position and State Farm's position in this case. If you are aware, or become aware, of any conflict, please notify me immediately. Should I discover facts that raise a conflict of interest, I will promptly advise you of the nature of the conflict. If you provide me this information in confidence as your lawyer, I will not disclose what you told me to State Farm. If a conflict arises that

cannot be resolved, a new lawyer will be selected to
represent you at State Farm's expense.[2]

The suit was tried in a bench trial, and State Farm paid the
resulting $3,608.09 judgment entered against Golden. Golden
nowhere alleges that she received deficient representation or
that she ever objected to the use of house counsel in her suit.
Instead, she maintains that State Farm owed her a duty to
disclose *at the time of policy issuance* the possibility that house
counsel would be used in the event of a third-party lawsuit.
Golden's three-count complaint alleges that the failure to
provide such disclosure amounts to a breach of "special,
confidential and fiduciary duties and common law duties to
disclose" (Count I); a breach of the duty of good faith and fair
dealing (Count II); and unjust enrichment (Count III).

The district court concluded that State Farm had no duty to
disclose the possibility that house counsel might be employed
to represent her in the event of a lawsuit relating to the policy.
Because all of Golden's claims depended on the existence of
such a duty, the district court granted the defendant's motion
to dismiss the complaint. The court also denied Golden's
motion to certify questions of state law to the Indiana Supreme
Court.

## II.

Our review of the district court's dismissal under Federal
Rule of Civil Procedure 12(b)(6) is de novo. We accept as true

---

[2] State Farm attached Murphy's letter to its reply to Golden's motion in the
district court to certify questions of state law to the Indiana Supreme Court.
Golden has not objected to its inclusion in the record.

all well-pleaded facts and draw all reasonable inferences from those facts in Golden's favor. *E.g., Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). When sitting in diversity, it is our task to "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Craig v. FedEx Ground Pkg Sys., Inc.*, 686 F.3d 423, 426 (7th Cir. 2012) (quoting *Thomas v. H & R Block E. Enters.*, 630 F.3d 659, 663 (7th Cir. 2011)). Golden's entire claim hinges on her belief that under Indiana law, State Farm owed her a duty to disclose, at the time her policy was issued, that it used house counsel to defend claims. In short, no such duty exists, and thus her claim fails.

Golden believes that the Indiana Supreme Court acknowledged that such a duty exists in *Cincinnati Insurance Company v. Wills*, 717 N.E.2d 151, 155–56 (Ind. 1999). The precise question in *Wills* was whether an insurance company engaged in the unauthorized practice of law when it employed house counsel to represent insureds. *Id.* at 153, 155. Specifically, the plaintiffs in *Wills* sought to disqualify the defendant's insurer from using house counsel, arguing that it amounted to the unauthorized practice of law. *Id.* at 153–54. Cincinnati Insurance Company intervened in an attempt to defend its own practice of providing counsel to its insureds through a "captive law firm" called "Berlon and Timmel." The court held first, that the use of house counsel to represent insureds did not necessarily amount to the unauthorized practice of law,[3] and

---

[3] Relatedly, the court held that the use of a "law-firm-like name" (in this
(continued...)

second, that in-house attorneys appearing as counsel to defend claims against an insured did not necessarily trigger an impermissible conflict in violation of the Rules of Professional Conduct. *Id.* at 155. In reaching this holding, the court made several observations about the notice required to a policy-holder regarding the possibility that house counsel may be used for claims defense.

Like Golden's policy here, the policy at issue in *Wills* stated that the insurance company would provide a defense by "counsel of our choice." Responding to whether this consti-tuted adequate disclosure, the *Wills* court first noted that "[o]nly by failing to comment on the issue at all does this language deal with the point … that the 'counsel of our choice' may be an employee of the insurer." *Id.* at 156. The court then rejected the argument that the representation was improper because the notice was deficient, stating as follows:

> As a general proposition, adequate disclosure is a matter in the first instance properly addressed through administrative regulation. The insurance commissioner may choose to require more explicit notice to the insured at the time the policy is taken out that 'counsel of our choice' could or will include house counsel. And a policyholder aggrieved by

[3] (...continued)
case "Berlon & Timmel") violated the Rules of Professional Conduct because it deceptively suggested that the attorneys were outside counsel.

nondisclosure of this arrangement at the time of issuance is free to assert whatever claim is thought to arise from that circumstance.

*Id.*

Because the *Wills* court was not actually ruling on the issue of disclosure, the foregoing comments are technically dicta. But it is clear from this passage that current Indiana law does not require an insurer to disclose at the outset that its choice of counsel in the event a claim arises may ultimately be house counsel. As the opinion clearly states, the level of disclosure required is a matter for the insurance commissioner to decide. Nowhere does Golden allege that the Indiana Department of Insurance has in fact chosen to require "more explicit notice" than the sort Golden received here, which was nearly identical to the notice given in the policy in *Wills*.

Golden, however, insists that *Wills* does require advance notice of an in-house counsel arrangement. Specifically, she makes much of the court's observation that when an insurance company employs house counsel to represent insureds, "accurate disclosure of the arrangement is required." *Id.* at 153. But the *Wills* opinion says nothing to suggest that "accurate disclosure" requires more than precisely the sort of disclosure Golden received: notice in her policy that State Farm would provide counsel of its choosing and an explanation at the time counsel was assigned of the exact relationship between that counsel and State Farm.

Moreover, the court's focus on "accurate disclosure" must be read in the context of the *Wills* case, which dealt in part with what it concluded was the inappropriate practice of an

insurance company providing counsel through its own employees but under a separate name (Berlon and Timmel) that deceptively implied independence from the insurer. *See id.* at 164–65. Nothing of that sort is alleged here. The policy made clear that State Farm would choose counsel, and when he (Mr. Murphy) was appointed, he made abundantly clear to Golden his exact relationship to State Farm as well as his ethical obligation to avoid potential and actual conflicts of interest. In *Wills*, the Indiana Supreme Court held that the use of house counsel does not result in an inherent conflict of interest or "any unethical practice." *Id.* at 162. And as the quoted passage above demonstrates, it also made clear that the precise nature of the notice required to the insured of such an arrangement is a matter for the state insurance commissioner, who in the more than ten years since *Wills* has apparently declined to require the sort of explicit notice at the time of policy issuance that Golden believes is required.

Golden's alternate theories are equally unavailing. She first claims that State Farm's failure to provide advance notice of its house counsel arrangement amounts to a breach of the duty of good faith and fair dealing. Golden is correct that Indiana law recognizes in insurance contracts an implied legal duty for an insurer to deal in good faith with its insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). But none of the allegations in her complaint establish a potential breach of such a duty, in either contract or tort. *See id.* at 519–20 (recognizing causes of action in both tort and contract for insurer's breach of duty to exercise good faith). As discussed above, State Farm had no obligation to explain in the initial stages of policy purchase the specifics of its house counsel arrangement. There

is thus no merit to Golden's claim that State Farm's failure to be more explicit somehow amounted to a "misleading" statement that breached its duty of good faith. *Cf. id.* at 519 (noting generally the types of contractual obligations of good faith and fair dealing incurred by insurer).

Golden's claim for unjust enrichment also fails for a number of reasons. First, the existence of an express contract forecloses recovery under a theory, such as unjust enrichment, implied in law. *See Zoeller v. E. Chi. Second Century Inc.*, 904 N.E.2d 213, 221 (Ind. 2009). On appeal, Golden attempts to argue that her contract with State Farm does not bar her claim, but this argument goes nowhere. Her complaint makes clear that she seeks recovery for what she alleges is State's Farm's unjust enrichment by virtue of "its delivery of a different and cheaper product compared with that promised in the Policy." Thus, her unjust enrichment claim is barred by the existence of the insurance contract on which she attempts to base it.

Moreover, notwithstanding the contract, her complaint simply fails to state a claim for unjust enrichment, which requires a showing that "a measurable benefit has been conferred on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust." *Landers v. Wabash Center, Inc.*, 983 N.E.2d 1169, 1173 (Ind. App. 2013). Golden does not allege that she objected to her representation by house counsel or that she received inadequate representation. In short, it is unclear how, even if State Farm's use of house counsel were somehow improper, that arrangement was detrimental to Golden in any way. *Cf. HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (stating that unjust enrichment requires

showing that defendant unjustly retained benefit to the plaintiff's detriment); *see also Kohl's Ind., L.P. v. Owens*, 979 N.E.2d 159, 167 (Ind. App. 2012). There is nothing in the complaint to support an inference that State Farm either a) delivered a product different than that promised in the policy (which stated clearly that it would provide counsel *of its choice* in the event of a lawsuit), or b) was unjustly enriched by its house counsel arrangement. As the Indiana Supreme Court noted in *Wills*, "[I]n the realm of insurance defense, the public may ultimately reap the benefits of better service at lower cost through the use of house counsel." 717 N.E.2d at 164. This hardly sounds like the makings of a claim for unjust enrichment.

Finally, we reject Golden's request to certify the question of policy disclosure to the Indiana Supreme Court. *See* Cir. R. 52(a). As our discussion of *Wills* should make clear, we are not "genuinely uncertain" about whether an insurer is obligated to disclose, at the time of policy issuance, its practice of using house counsel to defend insureds. *See Craig*, 686 F.3d at 429–30 (noting that most important consideration guiding the exercise of discretion to certify is whether we are "genu–inely uncertain" about a question of state law that is critical to resolution of the case). Nor do we believe this case presents a "matter of vital public concern" worthy of certification to the Indiana Supreme Court. *Id.* (listing other factors for consideration in deciding whether certification is appropriate).

### III.

For the foregoing reasons, we AFFIRM the district court's decision dismissing Golden's complaint under Rule 12(b)(6)

and denying her motion to certify questions of state law to the Indiana Supreme Court.