In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2977

MATTHEW BONNSTETTER, *et al.*,

*Plaintiffs-Appellants,*

*v.*

CITY OF CHICAGO, a Municipal
Corporation, *et al.*,

*Defendants-Appellees.*

No. 14-3573

GARRETT FISHWICK,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, a Municipal
Corporation,

*Defendant-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 4834 — **Virginia M. Kendall**, *Judge.*
No. 14 C 2553 — **Harry D. Leinenweber**, *Judge.*

ARGUED JANUARY 4, 2016 — DECIDED FEBRUARY 3, 2016

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge*. Eight plaintiffs-appellants in two cases, consolidated here on appeal (collectively the "Applicants"), applied for the position of police officer with the Chicago Police Department ("CPD"). All of the Applicants were, for various reasons, disqualified from consideration for the position. They then sued the City of Chicago (the "City"), claiming violations of the City's 2011 Hiring Plan (the "Hiring Plan"), violations of the Settlement Order and Accord entered in *Shakman v. Democratic Organization of Cook Co.*, 481 F. Supp. 1315 (N.D. Ill. 1979) (the "*Shakman* Accord"), and equal protection violations under the Illinois Constitution. In both cases, the district courts granted the defendants-appellees' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. All of the Applicants have limited their appeals to the dismissals of their *Shakman* claims. For the following reasons, we affirm the dismissals in both cases.

## I. BACKGROUND

The *Shakman* Accord resulted from resolution of a series of political patronage litigation.[1] The *Shakman* Accord was

---

[1] A detailed account of the *Shakman* litigation is provided in *O'Sullivan v. City of Chicago*, 396 F.3d 843, 847–50 (7th Cir. 2005), and need not be reiterated here for purposes of this discussion.

designed, in general, to eliminate political considerations in employment decisions made by the City. Pursuant to the *Shakman* Accord, the City agreed to create and implement a hiring plan to effectuate the goal of eradicating political patronage. *Shakman* "adds speech and political affiliation to the list" of impermissible bases of employment discrimination delineated by Title VII of the Civil Rights Act of 1964. *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir. 1985). Specifically, the consent decree entered June 20, 1983, in *Shakman v. Democratic Org.*, 569 F. Supp. 177 (N.D. Ill. 1983), precludes the City from "conditioning, basing or knowingly prejudicing or affecting the hiring of any person as a Governmental Employee (other than for Exempt Positions), upon or because of any political reason or factor including, without limitation, any prospective employee's political affiliation, political support or activity, political financial contributions, promises of such political support, activity or financial contributions, or such prospective employee's political sponsorship or recommendation." *Shakman*, 569 F. Supp. at 179.

In the case of *Matthew Bonnstetter, et al. v. City of Chicago, et al.* (No. 14-2977), the plaintiffs, including Matthew Bonnstetter ("Bonnstetter"), Peter Slowik ("Slowik"), Ilir Shemitraku ("Shemitraku"), Paul Sauseda ("Sauseda"), David Gutierrez ("Gutierrez"), Andrea Buttita ("Buttita"), and Tareq Khan ("Khan"), filed suit against defendants the City and CAPFS/LEPFS Joint Venture ("CAPFS"). Against the City, these plaintiffs alleged violations of the Hiring Plan, violations of the *Shakman* Accord, equal protection violations under the Illinois Constitution, and conspiracy under both 42 U.S.C.

§§ 1983 and 1985(3). As against CAPFS, these plaintiffs alleged one count of conspiracy, pursuant to 42 U.S.C. § 1983.

In the case of *Garrett Fishwick v. City of Chicago* (No. 14-3573), the sole plaintiff is Garrett Fishwick ("Fishwick"), and the sole defendant is the City. By his complaint, Fishwick alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, disability discrimination in violation of the Americans with Disabilities Act , 42 U.S.C. § 12111 *et seq.*, and violations of the *Shakman* Accord and the Hiring Plan.

The facts of these consolidated cases are taken from the complaints, which we are required to accept as true at this stage in the cases. *Golden v. State Farm Mut. Auto. Ins. Co.*, 745 F.3d 252, 253 (7th Cir. 2014). The CPD is responsible for hiring officers, and the City's Department of Human Resources Employment Services Division facilitates that hiring. In October 2010, the CPD published a job announcement for the police officer position. According to the announcement, the hiring process entailed a written examination, a medical examination, a background investigation, a psychological examination, a drug screening, a physical fitness test, and other application procedures. The City contracted with CAPFS to perform the psychological testing.

If an applicant passed the written examination, the applicant was placed on an eligibility referral list and given a lottery number. When a position became vacant, the applicant would proceed with the other portions of the application process, such as a medical examination, psychological examination, and drug screening, according to lottery number position. When

the Applicants in these cases passed the written examination, they were given a random lottery number, and proceeded with the application process.

CPD removed Applicants Bonnstetter, Gutierrez, and Slowik from eligibility based on the results of their psychological examinations. In his complaint, Slowik alleges that he was asked questions during his psychological examination regarding his veteran status, his experiences while serving in the United States Marine Corps, his combat record, and his beliefs and experiences regarding war. Two Applicants, Sauseda and Fishwick, were removed from eligibility when they reached the proscribed age limit of 40 during the application process. The CPD removed two Applicants, Shemitraku and Khan, based upon their failure of the polygraph examination. Although Applicant Buttita provided CPD with transcripts reflecting her sufficient college credits, CPD removed Buttita from eligibility because she did not meet the education requirements for the position.

Applicants Bonnstetter and Slowik, with plaintiff Alexander Muniz, filed their original complaint on June 3, 2013, naming the City and CAPFS as defendants. Their First Amended Complaint ("FAC") was filed October 14, 2013, adding Shemitraku, Sauseda, Gutierrez, Buttita, and Khan as plaintiffs, and removing Alexander Muniz as a plaintiff. Both the City and CAPFS moved under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss the FAC for failure to state a claim. The district court granted the motions, finding: Applicants Bonnstetter, Shemitraku, Sauseda, Gutierrez, Buttita, and Khan failed to state a *Shakman* claim; Bonnstetter's, Gutierrez's, and Sauseda's *Shakman* claims were barred by the

statute of limitations; and Slowik's *Shakman* claim was barred by *res judicata*.

Applicant Fishwick filed his complaint on April 9, 2014, naming the City as the sole defendant. As in the other case, the district court granted the City's Rule 12(b)(6) motion to dismiss, finding Fishwick failed to state a claim and failed to file within the statute of limitations period.

## II. DISCUSSION

We review the district courts' granting of the motions to dismiss under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the Applicants, the non-moving parties. *Golden*, 745 F.3d at 255. A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). To state a claim, a complaint must first provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement of the claim must sufficiently give "fair notice of what the … claim is and the grounds upon which it rests" to the defendants. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Additionally, the complaint's factual allegations must raise the claim above a mere "speculative level." *Id.* (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotations, and brackets omitted).

### A. Conspiracy Claim Against CAPFS

Preliminarily, because the Applicants failed to address any argument in their opening brief as against CAPFS, they have waived any such arguments or claims. *Sere v. Bd. of Tr.*, 852 F.2d 285, 287–88 (7th Cir. 1988). Specifically, the Applicants unilaterally limited their appeal to their *Shakman* claims, explicitly excluding their conspiracy claims. The only claim made against CAPFS is for conspiracy. But the Applicants failed to address or challenge the dismissal of the conspiracy claim in their appeal, and have thereby waived any claim on appeal.

### B. *Shakman* Claims Against the City

The Applicants complain that the City failed to utilize a "transparent" hiring process, allowing the City to manipulate the hiring process in an impermissible way. Although labeled a *Shakman* claim, the Applicants' theory does not constitute a genuine claim under *Shakman*. To assert a viable *Shakman* Accord violation, the Applicants must allege that a political reason or factor was the cause of the adverse employment action. *See, e.g.*, *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996); *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992); *Smith*, 769 F.2d at 410. Put plainly, the *Shakman* Accord prohibits political discrimination in employment, and the basis of a *Shakman* claim must be impermissible political discrimination.

Looking at the plain language of the Applicants' complaints (excluding Slowik at this point in the discussion) and accepting all facts as pleaded as true, the Applicants have failed to state a claim based on a violation of the *Shakman* Accord by failing

to allege any facts whatsoever pertaining to political affiliation, beliefs, or activities. None of the Applicants alleged any facts that would constitute a claim of impermissible political discrimination. They have not alleged any facts pertaining to their political affiliations, beliefs, or activities. They have not alleged that the City knew the political affiliations, beliefs, or activities of any of the Applicants. They have not alleged that the City eliminated them from consideration for the position because of their political affiliations, beliefs, or activities.

In addition, Applicants Bonnstetter, Gutierrez, Sauseda, and Fishwick failed to bring their *Shakman* claims within the appropriate statute of limitations period. A statute of limitations defense is properly considered in determining a Rule 12(b)(6) motion when the factual allegations in the complaint establish such a defense. *See, e.g.*, *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015)*; United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (citing *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002)) ("litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense," including statute of limitations).

The limitations period for a *Shakman* claim is 180 days from the date of the discriminatory act. *Smith*, 769 F.2d at 413. In the case of the Applicants, the discriminatory act occurred when the Applicants learned they had been eliminated from eligibility. *See, e.g.*, *Smith*, 769 F.2d at 413 (tolling of limitations period for *Shakman* claim begins when plaintiff demoted). Bonnstetter was notified of his ineligibility by e-mail on July 25, 2012, but filed his complaint on June 3, 2013. Gutierrez received his

rejection e-mail in December 2012, but his complaint was filed on October 14, 2013. Sauseda received his rejection letter on July 5, 2012, but his complaint was also filed October 14, 2013. Fishwick received his rejection letter on September 6, 2013, but filed his complaint on April 9, 2014. All of these *Shakman* claims were filed beyond the 180-day time limit and are therefore barred by the statute of limitations.

### C.  Applicant Slowik's *Shakman* Claim Against the City

The only Applicant who potentially approaches a *Shakman* claim is Slowik. According to the FAC, Slowik was asked questions during his psychological examination regarding his veteran status, his experiences while serving in the United States Marine Corps, his combat record, and his beliefs and experiences regarding war. At this point we may reasonably infer that these questions attempted to elicit Slowik's political views or beliefs.

However, Slowik failed to allege any other facts supporting a claim of unlawful political discrimination. He alleges no facts showing what his answers to the questions were, that the City knew what his answers or political inclinations were, and, perhaps most importantly, that the City disqualified him from eligibility because of his answers or his political beliefs or activity. The allegations constituting Slowik's *Shakman* claim do not rise above labels and speculation. In short, Slowik failed to state a *Shakman* claim.

At any rate, *res judicata* precludes Slowik's *Shakman* claim. Federal courts are to give full faith and credit, including any preclusive effects, to all judgments rendered in state courts that those judgments would have in those state courts. 28 U.S.C.

§ 1738; *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citations omitted). Here, Slowik filed a complaint against the City in Illinois state court asserting discrimination based upon his rejection from eligibility due to his "failing" of the psychological examination. Slowik dismissed his state complaint with prejudice.

We review a dismissal based upon *res judicata de novo*. *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1079 (7th Cir. 2011) (citation omitted). Because Slowik's dismissal occurred in an Illinois state court, we apply Illinois law pertaining to *res judicata. Id.* In Illinois, for *res judicata* to apply, "there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their 'privies.'" *Id.* (citing *Hudson v. City of Chicago*, 889 N.E.2d 210, 215 (2008)). The tripartite requisites of Illinois *res judicata* are met here. Slowik alleged the same cause of action, a *Shakman* claim, against the same defendant, the City, in his state court action as in his federal action. His dismissal with prejudice constitutes a final judgment on the merits. *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 530 (7th Cir. 2000) (citations omitted); *Torres v. Rebarchak*, 814 F.2d 1219, 1223 (7th Cir. 1987) (citations omitted).

Slowik argues that two equitable exceptions to *res judicata* should apply. First, Slowik argues the City acquiesced to his refiling of his claim in the federal action by failing to object. Such claim-splitting is permitted if the adverse party agrees or acquiesces to it. *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1018 (7th Cir. 2014), (citing Restatement (Second) of Judgments

§ 26(1) (1982)). However, there is no indication in the record that the City acquiesced to Slowik's filing of the complaint in federal court. The City objected to the federal suit during the pendency of the state suit and asserted *res judicata* as an affirmative defense in all motions filed in the district court. There is no equitable reason why *res judicata* should not apply based on acquiescence.

We note that Slowik and the City agreed to the order dismissing the administrative review complaint with prejudice in the Illinois state court. Had Slowik provided evidence that this agreement was based on an understanding with the City that he would pursue his claims in federal court, perhaps he could have prevailed on an acquiescence argument. In the absence of such a record, however, we cannot assume the City acquiesced.

Second, Slowik argues, without citation to authority, that his claim should not be precluded because the Illinois state court lacked jurisdiction to hear *Shakman* claims and to provide the relief sought by him. This argument lacks merit. We have specifically held that "Illinois litigants seeking circuit-court review of administrative proceedings implicating events that also give rise to a federal civil-rights claim must join that claim with the judicial-review action in the circuit court," as Illinois circuit courts have jurisdiction over federal civil rights claims. *Walczak*, 739 F.3d at 1017 (citations omitted). Therefore, we find no equitable reason why *res judicata* should not apply to bar Slowik's *Shakman* claim.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the district courts.